IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ALVIN AVON BRAZIEL, JR.,

               Petitioner,

       VS.                                Cause No. 3:09-CV-1591-M

RICK THALER,                   Death Penalty Case
Director, Texas Department of Criminal
Justice, Institutional Division,

               Respondent

---

PETITIONER'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW

     COMES NOW the Petitioner in the above captioned cause, by and through

undersigned counsel, and pursuant to this Court's Order of January 31, 2014 (D.C.

Docket No. 36) submits the following Proposed Findings of Fact and Conclusions of

Law:

FINDINGS OF FACT

     1. On February 22, 2001 the Petitioner was indicted for the offense of capital

murder in Dallas County Texas.

     2. The offense for which the Petitioner was indicted occurred on September 21,

1993, 7 ½ years prior to the indictment and 6 months after the Petitioner turned 18 years

old.

     3. Attorneys Richard K. Franklin and Rick Harrison were appointed by the Court

1

to represent Mr. Braziel.

4.   Although counsel for the Petitioner filed an "Omnibus Pretrial Motion," and motion for a DNA expert, *see* 1 CR at 10, D.C. Docket No. 53-1 at 14, defense counsel filed no motions or requests for a psychiatrist, psychologist or a mitigation expert and the Clerk's Record is devoid of any such requests.

5.   On July 25, 2001 the jury entered its verdict finding Mr. Braziel guilty of the offense of capital murder. 32 RR at 125, D.C. Docket No. 55-2 at 125.

6.   Immediately following the entry of the guilty verdict the punishment phase of the Petitioner's trial commenced, with the State offering into evidence a misdemeanor offense of evading arrest, an offense of aggravated sexual assault of a minor with use of a weapon,[1] and armed robbery, during which the Petitioner allegedly stole a vehicle at gunpoint and shot and wounded the driver.

7.   No evidence of any criminal conduct on the part of the Petitioner prior to the 1993 offense of which he was convicted was offered either by the prosecution or the defense.

8.   The defense punishment case consisted of the testimony of two witnesses. Chris Freyer testified that he knew the Petitioner prior to the offense, when the Petitioner was homeless and allowed the Petitioner to stay at his home over the Christmas holiday, and

---

[1]One of the claims in the Petitioner's Application for Habeas Corpus addressed the fact that the State withheld evidence that the victim of the sexual assault had recanted her statement that the Petitioner used a weapon during the sexual assault.

also when the Petitioner was on probation for his sexual assault conviction. *See* 34 RR at 6-13, D.C. Docket No. 55-4 at 6-13.

9.  William Matthew Frye, Jr. was the Petitioner's defense attorney for his sexual assault conviction and testified that there was no evidence in the case that indicated the use of a weapon or of serious bodily injury. *Id.* at 22-24, D.C. Docket No. 55-4 at 22-24

10.  Sandra Freyer testified that she knew the Petitioner when he was 16 years of age and that the Petitioner stayed at her home and mowed lawns with her son. She further testified that the Petitioner looked at her as a "second mother." 34 RR at 28, D.C. Docket No. 55-4 at 28.

11.  The Court finds that although defense counsel contacted the Petitioner's mother and had her attend the trial, that she was not called as a witness, a fact which was pointed out by the prosecution in its closing argument. *See* 34 RR at 69, D.C. Docket No. 55-4 at 69.

12.  The Court further finds that neither defense counsel or anyone employed by counsel attempted to obtain a psychological or social history of the Petitioner or his family. *See* Affidavit of Glenda Turner, D.C. Docket No. 16 at 57-58.

13.  The Court finds that the entire punishment case presented by defense counsel consisted of less than 25 pages of direct testimony.

14.  Based upon information gathered and presented by state and federal habeas

counsel in pleadings, filings and in the evidentiary hearing the Court finds that the following mitigating circumstances were readily available to trial counsel :

A.  That the Petitioner was 18 years of age and had no criminal record prior to the time of the offense;

B.  That the Petitioner's family has a history of mental illness, and specifically that his mother and least one other family member suffer from schizophrenia and take psychotropic medication;

C.  That the Petitioner was born to a 17 year old mother and was exposed to alcohol and marijuana while *in utero*.

D.  That the Petitioner suffered extreme emotional and physical abuse at the hands of family members, including but not limited to at least  two head injuries, one of which was serious and inflicted on the petitioner with a stick when he was three years old and required an extensive period of hospitalization with little, if any followup care.

E.  That TDCJ records show that the Petitioner has an IQ of 75, which falls within the standard error of measurement for the assessment of mental retardation.

F.  That the Petitioner lived and was raised in an environment of extreme poverty, family dysfunction and domestic and community violence .

4

G.  That the Petitioner was forced from the family home at the age of 15 years old and was virtually homeless from age 15 until the time he  was arrested.

H.  That the Petitioner's early education was severely compromised by the fact of his family's various moves to different school districts and the Petitioner left school in the 8th grade while he was homeless.

*See* Declaration of Amanda Maxwell, D.C. Docket No. 57, Declaration of Glenda Turner, Petitioner's Exhibit P-12, D.C. Docket No. 70 at 1-28

15.  The Court further finds that with the limited exception of some of the testimony of Sandra Freyer relating to the behavior of the Petitioner when he was 16 years old, none of the above listed mitigation was presented by trial counsel during the punishment phase of the Petitioner's trial.

16.  On July 26, 2001, after final argument by defense counsel that occupied only 7 pages of transcript, the jury answered "Yes" to the first special issue and "No" to the second special issue and the Court sentenced Mr. Braziel to death. 34 RR at 72-73, D.C. Docket No. 55-4 at 72-73.

16.  On August 2, 2001 the trial court issued an Order appointing Douglas Parks as counsel for the Petitioner pursuant to Art. 11.071of the Texas Code of Criminal Procedure for the purpose of preparing and filing an Application for Habeas Corpus. D.C. Docket No. 52-3 at 1.

5

17.   Based upon testimony of Mr. Parks at the hearing and documents from his file submitted in support of the Petitioner's Motion for Summary Judgment the Court finds that Mr. Parks was an experienced death penalty lawyer who has handled over twenty capital cases and has taught at death penalty seminars. *See* Transcript at 101.

18. The Court finds that Mr. Parks investigated the Petitioner's case and as a result of his investigation discovered readily available information from the Texas Department of Criminal Justice that the Petitioner had an IQ of 75, which falls within the standard error of measurement for one of the criteria for the assessment of mental retardation, obtained records from Parkland Hospital documenting the Petitioner's traumatic brain injury at the age of three years old, and information on the Petitioner's family history obtained from an interview with Glenda Turner, the Petitioner's mother. *See* D.C. Docket No. 70 at 1-28.

19.   Based upon his investigation Mr. Parks prepared a claim setting forth facts that Mr. Braziel was mentally retarded and therefor exempt from execution under the decision of the United States Supreme Court in *Atkins v. Virginia*, 536 U.S. 304 (2002). As part of the mental retardation claim Mr. Parks also filed a request for funding and an evidentiary hearing on the claim.

20.   Prior to filing his final application for habeas corpus Mr. Parks prepared a 67 page preliminary draft of the application. Included in the preliminary draft as Ground for Relief No. 5 was a claim for ineffective assistance of trial counsel which stated that:

6

Mr. Braziel was denied the right to effective assistance of counsel, under the Sixth and Fourteenth Amendments to the United States Constitution, because trial counsel failed to prepare and present relevant mitigating evidence at the punishment stage of trial.

Mr. Parks then summarized the claim, stating that trial counsel:

1. Failed to adequately develop and present risk assessment evidence which would have shown that Braziel had a much higher probability of future nondangerousness than he did of future dangerousness;

2. Failed to adequately develop and present mitigating evidence of Braziel's mental retardation;

3. Failed to adequately develop and present mitigating evidence of pervasive mental illness in Braziel's immediate family, including his grandmother, mother, uncle and brother and early childhood abandonment by his father.

See Petitioner's Exhibit P-9

21.  The Court finds that Mr. Parks took no further steps to  develop the claim of ineffective assistance of trial counsel and in fact failed to include it in the final Application for Habeas Corpus that was filed in the trial court and Court of Criminal Appeals.

22.  The Court finds that Mr. Parks testified that the ineffective assistance of trial counsel claim he drafted would have been substantial if supported by records in his file

7

and that his failure to include the claim in the application for habeas corpus would have been error. Transcript at 115 ll. 24-25, 116 1-12.

23. The Court finds that the state habeas court denied Mr. Parks' request for funding and an evidentiary hearing on his *Atkins* claim and instead ordered the parties to file proposed findings of fact and conclusions of law, and  May 12, 2009, the trial court approved Findings of Fact and Conclusions of Law filed by the State and denied relief.

24. Prior to the filing of the federal petition for habeas corpus, on March 22, 2010 appointed counsel Richard Wardroup and Donald Vernay filed a motion and request for investigative funds in order to prepare Mr. Braziel's *Atkins* claim. D.C. Docket No. 9.

25. On June 23, 2010 this Court granted preliminary funds in the amount of $1,500.00 for purposes of counsel's retaining Amanda Maxwell, a licenced social worker and mitigation expert, to do a preliminary background investigation of Mr. Braziel's *Atkins* claim. D.C. Docket No. 14.

26. On August 17, 2010 appointed federal habeas counsel filed a Petition for Habeas Corpus on behalf of Mr. Braziel, which contained both the *Atkins* claim filed by Mr. Parks and as a result of the preliminary investigation performed by Ms. Maxwell, counsel filed an ineffective assistance of trial counsel claim similar to the one that Mr.

Parks failed to file with the Petitioner's state application for habeas corpus.[2] *See* D.C.

Docket No. 16.

27.  Based upon the preliminary information obtained by Ms. Maxwell addressing

Mr. Braziel's chaotic upbringing, history of family mental illness and other mitigation she

discovered, contemporaneously with the filing of the petition for habeas corpus, under

*Rhines v. Weber*, 544 U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005) counsel  filed a

motion to stay the federal proceedings so they could return to state court to exhaust the

newly discovered ineffective assistance of trial counsel claim. D.C. Docket No.17.

28.  On February 28, 2011 this Court issued an Order denying the Petitioner's

motion to stay the proceedings, holding *inter alia* that because the Petitioner had failed to

present and exhaust his ineffective assistance of counsel claim in state court and the claim

did not meet the successor requirements of Section 5 of Art. 11.071 Tex. Code Crim,.

Pro., he had failed to show good cause to excuse the default. D.C. Docket No. 27

29.  On March 14, 2013 this Court *sua sponte* issued an Order suspending the

proceedings in the instant case pending the decision of the United States Supreme Court

in *Trevino v. Thaler,*  133 S. Ct. 1911 (2013) in which the Supreme Court was asked to

decide if its decision in *Martinez v. Ryan,*  132 S.Ct. 1309 (2012) holding that a

procedural default will not bar a federal habeas court from hearing a substantial claim of

---

[2] At the time federal counsel filed their ineffective assistance of counsel claim they had not yet come into possession of the draft application for habeas corpus prepared by Mr. Parks containing his ineffective assistance of trial counsel claim.

ineffective assistance at trial if, in the State's initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective, applied to Texas cases. D.C. Docket No. 30.

30.   On May 28, 2013 the United States Supreme Court issued its decision holding that *Martinez v. Ryan, supra* did in fact apply to Texas cases, and on May 31, 2013 this Court issued an Order reopening the proceedings and directing the parties to file supplemental briefs addressing the application of *Martinez* to the Petitioner's case. D.C. Docket No. 31.

31.   On January 31, 2014 the Court issued an Order setting an evidentiary hearing for July 31, 2014 on the issues of whether the Petitioner's ineffective of assistance of counsel claim was "substantial" as contemplated by *Martinez v. Ryan, supra* and whether the failure to present the claim to the state courts was a result of the ineffectiveness of state habeas counsel. D.C. Docket No. 36.

32.   On July 31, 2013 the Court held an evidentiary hearing during which it heard testimony from trial counsel Richard Harrison and Richard Franklin who testified *inter alia* that the reason they requested no experts or obtained no information regarding the Petitioner's head injuries or family background was that the records were unavailable and that Petitioner denied his head injuries and his mother refused to cooperate with counsel. *See* Transcript at 19 ll.10, 24-25, 25 ll. 6-8, 30 ll. 6-7.

33.  The Court also heard testimony from state habeas counsel Douglas Parks, who had prepared an ineffective assistance of trial counsel claim based upon trial counsel's failure to investigate and present substantial mitigation evidence of family mental illness and abuse suffered by the Petitioner at the hands of his family, but failed to include the claim in the application for habeas corpus that he filed in the state court. *See* Transcript at 105-112.

34. Mr. Parks further testified that because he did not have his file he could not definitively recall why he failed to include the ineffective assistance claim in the document he filed with the state court. *See* Transcript at 116-117.

35.  The Court finds that under its own questioning Mr. Parks testified that to the best of his recollection he did not speak to the Petitioner's mother, Transcript at 118, yet Plaintiff's Exhibit 15 consisting of four pages of Mr. Parks' notes specifically sets forth information pertaining to the family history of mental illness, abuse, and the Petitioner's traumatic brain injury, which not only completely supports the ineffective assistance of counsel claim that he did not file with his application for habeas corpus, but is also virtually identical to the information contained in the declaration of Glenda Turner provided by Ms. Turner to Petitioner's counsel in 2010 and admitted into evidence as Petitioner's Exhibit 12.

36.  The Court further finds that based upon documents from Mr. Parks' file entered into evidence as Petitioner's Exhibits 13, 14 and 15 the TDCJ records Mr. Parks

obtained, his interview with Ms. Turner, and the records from Parkland hospital contained in Petitioner's Exhibit 14 which corroborated both  Ms. Turner's story and the TDCJ records containing the voluntary disclosure of the head injuries and abuse by the Petitioner would have been readily available to trial counsel.

37.  Although Mr. Franklin testified that trial counsel informed the trial court about the alleged failure of the Petitioner to cooperate, none of the alleged colloquies appear at any place in the record.

38. The Court finds that none of the testimony of trial counsel is supported by any statements in the trial record regarding the Petitioner's refusal to cooperate and that trial counsel produced no documents or records to  to support their testimony that their failure to retain any experts to investigate the Petitioner's family and social history was due to the Petitioner's and his family's refusal to cooperate.

39.  The Court further finds that the fact that the Petitioner's mother readily submitted to interviews both  by Mr. Parks in 2003 and Amanda Maxwell in 2010 and provided them with significant information regarding the Petitioner's traumatic brain injury and  the history of family mental illness and abuse casts significant doubt on the testimony of both trial counsel that the Petitioner and his family refused to cooperate with trial counsel.

40.  The Court further finds that the records from Parkland Hospital documenting two head injuries suffered by the Petitioner were readily available to trial counsel in 2001

12

and further finds that trial counsel or their investigator made no effort to obtain the records.

41. The Court finds that trial counsel Richard Franklin's referral to Mr. Braziel's traumatic brain injury at the age of three years old as "this injury stuff" in his testimony indicates a lack of knowledge of the mitigation value of that evidence on the part of trial counsel as well as a failure properly to investigate and prepare the Petitioner's mitigation case. *See* Transcript at 67.

42. The Court finds that lead trial counsel Richard Harrison's referral to the preparation of a capital punishment case as "that mitigation stuff" and his placing the burden of the mitigation investigation on the client manifests both a complete lack of knowledge of the 1989 ABA Guidelines for the Appointment and Performance of Death Penalty Counsel and a failure properly to investigate and prepare the Petitioner's mitigation case . *See* Transcript at 74.

43. The Court finds that trial counsel Richard Franklin's testimony that his private investigator, an ex policeman, was both capable of and did in fact interview Mr. Braziel's family and school teachers is not credible and totally unsupported by any record of the interviews or any billing or other documents in the record or in counsel's file pertaining to the alleged interviews.

13

44. The Court further finds that trial counsel's failure to request any experts or assistance in order to investigate and prepare the Petitioner's punishment case cannot be justified by their testimony that the Petitioner's family would not cooperate.

45. The Court finds that there was substantial mitigating evidence readily available to trial counsel, including a total lack of a criminal history, the Petitioner's youth, a history of family mental illness, traumatic brain injury, family abuse, low IQ at the time of the Petitioner's trial and that trial counsel failed to investigate and present any of this evidence at the punishment phase of the Petitioner's trial and that this failure severely prejudiced Mr. Braziel's punishment case.

46. The Court finds that the testimony of both Mr. Franklin and Mr. Harrison that their failure to investigate and present the significant mitigation evidence available at the time of the Petitioner's trial was due to the failure or refusal of the Petitioner and his family to cooperate is completely unpersuasive and contrary their duties as capital counsel as set forth to the 1989 American Bar Association Guidelines for the Appointment and Performance of Death Penalty Counsel.

Based upon the foregoing findings of fact the Court issues the following Conclusions of Law

## CONCLUSIONS OF LAW

1. In claims regarding the a violation of a Petitioner's Sixth Amendment right to counsel, the governing standard by which the performance of trial and appellate counsel

14

are  judged is set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To demonstrate

a violation of this  right petitioner must prove: 1)  counsel's representation fell below

professional norms; and 2)  a reasonable probability that, but for counsel's deficiency, the

result of the trial would have been different.  466 U.S. at 687, 694.

2.   Certain choices of counsel that are considered as part of "trial strategy,"

however, are considered exempt from challenge. *Id.* at 695.

3.   In *Williams v. Taylor*, 529 U.S. 362,  120 S.Ct. 1495 (2000), the Court once

again explained the standard for judging the quality of counsel set forth in *Strickland*

within the context of a death penalty case:

> We explained in *Strickland* that a violation of the right on
> which Williams relies has two components:
>   "First, the defendant must show that counsel's performance
>   was deficient. This requires showing that counsel made
>   errors so serious that counsel was not functioning as the
>   'counsel' guaranteed the defendant by the Sixth Amendment.
>   Second, the defendant must show that the deficient
>   performance prejudiced the defense.   This requires showing
>   that counsel's errors were so serious as to deprive the
>   defendant of a fair trial, a trial whose result is reliable." *Id.,*
>   at 687, 104 S.Ct. 2052.
> To establish ineffectiveness, a "defendant must show that
> counsel's representation fell below an objective standard of
> reasonableness." *Id.,* at 688, 104 S.Ct. 2052.   To establish
> prejudice he "must how that there is a reasonable probability
> that, but for counsel's unprofessional errors, the result of the
> proceeding would have been different.   A reasonable
> probability is a probability sufficient to undermine confidence
> in the outcome." *Id.,* at 694, 104 S.Ct. 2052.

529 U.S. at 390-391, 120 S.Ct. at 1512 .

4.    As in *Williams,* counsel in the instant case ignored and/or failed to investigate or present evidence of Mr. Braziel's family history of mental illness, head injuries, family violence and abuse, and possible mental retardation. *Compare* 529 U.S. at 370, with facts set forth in the Declaration of Amanda Maxwell at D.C. Docket No. 57, the declaration of Glenda Turner in Petitioner's Exhibit P-12, the notes of Mr. Parks in Petitioner's Exhibit 15 and the records from Parkland Hospital in Petitioner's Exhibit 14.

5.    In *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527 (2003) the Supreme Court further elaborated on what constitutes reasonable performance by counsel trying a death penalty case.  As in *Strickland*, as well as in the instant case, counsel in *Wiggins* either limited or failed to conduct a proper investigation into potentially mitigating evidence, and claimed that this failure was "a tactical judgment not to present mitigating evidence at sentencing and to pursue an alternate strategy instead." 539 U.S. at 521, 123 S.Ct. at 2535.

The *Wiggins* Court then went on to note that:

> In light of these standards, our principal concern in deciding whether Schlaich and Nethercott exercised "reasonable  professional judgment," *id., at 691, 80 L Ed 2d 674, 104 S Ct 2052*, is not whether counsel should have presented a mitigation case.  Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of Wiggins' background  *was itself reasonable.  Ibid.* Cf. *Williams v. Taylor, supra, at 415, 146 L Ed 2d 389, 120 S Ct 1495* (O'Connor, J., concurring) (noting counsel's duty to conduct the "requisite, diligent" investigation into his client's background).  In assessing counsel's investigation, we must conduct an objective review

16

of their performance, measured for "reasonableness under
prevailing professional norms,"

539 U.S. at 522-523, 123 S.Ct. at 2536 (*italics in original*).

6.  The *Wiggins* Court specifically  cited the 1989 ABA Guidelines for the

Appointment and Performance of Counsel in Death Penalty Cases as "guides to

determining what is reasonable" in assessing counsels performance in death penalty

cases. *Id*  at 524, 123 S.Ct. at 2537 (*citations omitted*).  Guidelines11.8.1, 3 and 6 and

their commentary make it absolutely clear that the punishment phase of a capital case is

"constitutionally different from sentencing proceedings in other criminal cases." Such

proceedings may require the life and character of a defendant to be revealed in detail, and

the assistance of experts may be essential. "Full preparation for a sentencing trial must be

made in every case." ABA Guidelines (1989) at 118.

7.  In applying the law pertaining to ineffective assistance of trial counsel as

clearly  established by the United States Supreme Court in *Strickland, Williams* and

*Wiggins, supra* and reviewing the actions of the Petitioner's trial counsel in light of the

1989 ABA Guidelines, the Court concludes that the actions of the Petitioner's trial

counsel in failing  even to request the appointment of   an expert qualified to conduct a

psycho social  investigation of  Mr. Braziel's background and that of his family,

particularly in light of the amount of readily available mitigation evidence produced by

both  Petitioner's counsel's mitigation investigator and state habeas counsel Douglas

Parks, constitutes performance that falls so far below the standard of performance

17

required of counsel trying death penalty cases as to establish a violation of the Petitioner's Sixth Amendment right to the effective assistance of counsel.

8.   In addressing the issue of whether trial counsel's substandard performance prejudiced the Petitioner's case, the Court is aware of the egregiousness of the offense of which Mr. Braziel was convicted, but the Court further takes notice of the fact that other than presenting scant evidence from two witnesses who offered testimony that the Petitioner seemed to be a "nice kid," trial counsel's failure to present the jury with evidence of Mr. Braziel's complete lack of a criminal record prior to the offense of which he was convicted, his young age, his chaotic family background of abuse and neglect, his family history of mental illness, his traumatic brain injury requiring 3 weeks hospitalization suffered at the age of three years as a result of abuse by a family member, and his homelessness as a child and borderline mental retardation, which might have offered the jury some explanation of the change in behavior from a juvenile free of any criminal background to the monstrous portrait painted by the prosecution in its punishment case that went virtually unchallenged by the defense.

Given all this, there clearly is merit to the notion that, had trial counsel's performance not been deficient during sentencing, "at least one juror would have struck a different balance." *See Wiggins*, 539 U.S. at 537. The Court thus  concludes that Mr Braziel's claim of ineffective assistance of trial counsel during sentencing is substantial.

9.   The Court therefore concludes that trial counsel's abject failure to present any kind of meaningful mitigation case in light of the surfeit of mitigation evidence available clearly prejudiced the Petitioner's case and therefore satisfies the second prong of the *Strickland* requirements.

10.   Based upon the record before the Court, the Court further concludes that defense counsel have presented no tactical or strategic justification for their failure to investigate and present a meaningful mitigation case on the Petitioner's behalf so as to exempt counsel from the requirements of *Strickland v. Washington, supra,* and given the readily available mitigation evidence, blaming this failure on the Petitioner and his family does not excuse this failure under *Strickland*.

11.   In *Martinez v. Ryan*,  132 S.Ct. 1309 (2012) the United States Supreme Court held that:

> Where,  under state law, claims of ineffective assistance of
> trial counsel must be raised in an initial-review collateral
> proceeding, a procedural default will not bar a federal habeas
> court from hearing a substantial claim of ineffective
> assistance at trial if, in the initial-review collateral
> proceeding, there was no counsel or counsel in that
> proceeding was ineffective.

132 S.Ct. at 1320.

12.   Thus, the burden is on the Petitioner first to prove that his claim of ineffective assistance of trial counsel is substantial. In reviewing the record before it the Court finds

19

that trial counsel's failure to conduct any kind of meaningful mitigation investigation, particularly in light of the substantial number of mitigating factors present in the Petitioner's back ground, clearly prejudiced the Petitioner and Court therefore concludes that the Petitioner has shown by a preponderance of the evidence that his ineffective assistance of counsel claim is substantial within the purview of the *Martinez* ruling.

13.  In order to excuse the procedural default, however, the Petitioner must also prove that the default resulted from the ineffective assistance of his state habeas counsel, and the instant case provides the highly unusual situation in which state habeas counsel drafted a detailed ineffective assistance of trial counsel claim for failure to conduct a mitigation and background investigation, but neglected to include it in the Application for Habeas Corpus that was filed in the State court.

14.  Given the draconian consequences of failing to raise what the Court has concluded is such a substantial claim, the Court further concludes that whatever the reason state habeas counsel either purposefully chose or simply neglected to include the claim in the application, it cannot be considered as trial strategy within the meaning of the *Strickland* exception.

14. Given the testimony of Mr. Parks that his own failure to include the claim was error, given the substantial mitigation that he readily obtained and was included in his file, the Court therefore concludes that Mr. Parks' failure to raise or include the Petitioner's ineffective assistance of counsel claim can only be construed as ineffective,

and, as noted above, Mr. Braziel suffered prejudice as a result of he actions of Mr. Parks. thus excusing the default of the Petitioner's claim as contemplated by the *Martinez* ruling.

15.  In its Order setting the hearing in this cause the Court indicated that in addition to considering the *Martinez* factors it might also address the merits of the Petitioner's claim, and given the substantial amount of mitigation evidence that was available at the time of the Petitioner's trial presented by the Petitioner's  counsel and the complete lack of any viable strategy on the part of trial counsel for failing to investigate Mr. Braziel's background and family history, the Court finds that the Petitioner has proven the merits of his ineffective assistance of counsel  claim by a preponderance of the evidence and the Court will enter the necessary Order vacating the Petitioner's death sentence.

16.  The Court further concludes that having granted the Petitioner relief on his ineffective assistance of counsel claim and vacating his death sentence, the remaining six exhausted  claims in the habeas petition are deemed moot and absent objection from the parties, the Court will enter an Order dismissing the remainder of the petition without prejudice. *See Shuffield v. Director,* No. 6-08-cv-180, D.C. Docket No. 57 ( E.D. Tex. May 30, 2014).

Respectfully submitted this 5th day of September, 2014.

21

/s/ Donald Vernay
DONALD VERNAY
Attorney at Law
1604 Golf Course Road SE
Rio Rancho, NM 87124
(505) 892-2766
State Bar No. 24035581
Counsel for Mr. Braziel

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was filed electronically and also was mailed to the Petitioner at the following address:

Alvin Braziel #999393
Polunsky Unit
3872 Fm. 350 South
Livingston, TX 77351

/s/ Donald Vernay
Donald Vernay