IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALVIN AVON BRAZIEL, JR., | § | |
| Petitioner, | § | |
| | § | Civil Action No. 3:09-cv-1591 |
| v. | § | (District Judge Barbara M. G. Lynn) |
| | § | |
| WILLIAM STEPHENS, | § | * DEATH PENALTY CASE * |
| Director, Texas Department | § | |
| of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

**RESPONDENT'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

This is a federal habeas corpus proceeding brought by Petitioner Alvin Braziel, Jr., a death-sentenced Texas inmate. In August 2010, Braziel filed his petition for federal habeas corpus relief in this Court raising, among other things, an ineffective-assistance-of-trial-counsel (IATC) claim alleging that his trial counsel failed to adequately investigate and present compelling mitigating evidence at the punishment phase. Docket Entry (DE) 16 at 19-22. Braziel faulted counsel for not speaking more with his family members, and for failing to retain a psychologist, a neuro-psychologist, or a mitigation investigator to help investigate his life history. *Id.* Had counsel investigated properly, Braziel argued, they would have found compelling mitigating evidence that could have been presented to the jury, including evidence that he suffered a head injury as a child, that he had a poor work and educational history, that he was allegedly abused by his step-father, and that some of his family members have a history of mental problems. *Id.*

The Director responded, in part, by demonstrating that Braziel's IATC allegation was unexhausted and procedurally defaulted as well as completely without merit. DE 26 at 12-28. Since that time, however, the Supreme Court issued its opinion in *Martinez v. Ryan*,[1] which created for the first time a limited exception to the procedural bar of IATC claims. Specifically, the Court found that where IATC claims must be raised in an initial-review collateral proceeding, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 132 S. Ct. at 1320. The Court's more recent decision in *Trevino v. Thaler*[2] found that this limited equitable exception generally applies to Texas capital cases.

In light of these decisions, this Court recently held an evidentiary hearing to determine (1) whether Braziel has set forth any substantial IATC claim, and (2) whether any such claim was not properly presented to the state court because of the ineffective assistance of state habeas counsel. DE 64. Having considered the testimony elicited during this live evidentiary hearing, as well as all of the pleadings and exhibits filed by the parties, the state court record and any official court documents, and the Court's personal experience and knowledge, the Court makes the following findings of fact and conclusions of law:

---

1   132 S. Ct. 1309 (2012).

2   133 S. Ct. 1911 (2013).

# FINDINGS OF FACT

## I. Background

1. Braziel was represented by attorneys Richard Franklin and Richard Harrison at his capital murder trial. Evidentiary Hearing Transcript (Transcript) at 12, 40, 73.

2. Richard Franklin has been practicing law for forty years, thirty-eight of which have been dedicated to criminal defense. *Id.* at 11, 40. At the time of Braziel's trial in 2001, Mr. Franklin had been lead counsel in ninety-eight felony murder cases, and had tried ten capital murder cases, four of which were death penalty cases. *Id.* at 40-41. In the four prior death penalty cases he had tried, two of them resulted in a life sentence. *Id.* at 41.

3. Richard Harrison has been practicing law for twenty-five years, roughly seventeen of which have been dedicated to criminal defense. *Id.* at 85. Mr. Harrison started as an Assistant District Attorney with Dallas County from 1990 to 1994, and was then in private practice as a defense attorney from 1994 until 2007. *Id.* From 2007 through 2010, Mr. Harrison served as the elected District Attorney for Kaufman County. Since then, he has resumed his private practice as a defense attorney. *Id.* As both a prosecutor and a defense attorney, Mr. Harrison has tried at least fifty murder jury trials, at least half of which were capital murder cases. *Id.* at 86. Mr. Harrison has also tried a total of six capital cases where the State was seeking the death penalty—Braziel was his second. *Id.*

4. Mr. Franklin and Mr. Harrison had worked together a year prior to Braziel's trial in the death-penalty trial of Carlton Turner. *Id.* at 86-87.

5. For the Braziel case, Mr. Franklin and Mr. Harrison obtained the assistance of a qualified private investigator, David Wells. *Id.* at 17, 19, 43, 74. Mr. Wells was a former police officer that they had used on several other occasions, including the previous death-penalty trial of Carlton Turner. *Id.* at 34, 48, 74. Both attorneys considered Mr. Wells to be "absolutely qualified" and believed he was "very good" at finding witnesses. *Id.* at 34, 74, 89.

3

6. The Court finds the testimony of Mr. Franklin and Mr. Harrison that was given at the evidentiary hearing to be credible. *Id.* at 11-100. The Court also finds that Mr. Franklin and Mr. Harrison were eminently qualified to represent a capital defendant at the time they represented Braziel.

7. On July 26, 2001, despite the effort of his trial counsel, Braziel was convicted and sentenced to death in Dallas County for the September 21, 1993 robbery and murder of Douglas White. CR 2 (Indictment), 106-109 (Judgment).[3]

8. On direct appeal, Braziel's conviction and sentence were affirmed by the Texas Court of Criminal Appeals in an unpublished opinion delivered October 1, 2003. *Braziel v. State*, No. 74,139 (Tex. Crim. App.).

9. During his state habeas proceedings, Braziel was represented by attorney Douglas Parks, who filed a State Application for Habeas Corpus on Braziel's behalf on July 3, 2003. *Ex parte Braziel, Jr.*, No. 72,186-01; SHCR at 2.

10. Mr. Parks has been practicing law for forty-four years, and has worked on twenty-two capital death-penalty cases at either the trial, appellate, or post-conviction level. Transcript at 101.

11. The Court finds the testimony of Mr. Parks that was given at the evidentiary hearing to be credible. *Id.* at 101-125. The Court also finds that Mr. Parks was eminently qualified to represent a capital defendant in post-conviction proceedings at the time he represented Braziel.

---

[3] "CR" refers to the Clerk's Record, and is followed by the relevant page number. "RR" refers to the Reporter's Record of transcribed trial proceedings, and is preceded by volume number and followed by page numbers. "SHCR" refers to the state habeas Clerk's Record—the transcript of pleadings and documents filed with the court during Braziel's state habeas proceeding—and is also followed by the relevant page numbers. "SX" and "DX" refer to the State's exhibits and the defense's exhibits, respectively, admitted during the trial. "PX" refers to the petitioner's exhibits that were offered at the evidentiary hearing. "RX" refers to the respondent's exhibits that were filed concurrently with these findings. DE 83.

12. The State Application for Habeas Corpus filed by Mr. Parks was ultimately 57 pages in length (with another 90 pages of exhibits) and raised a total of 6 claims for relief, including an IATC claim. SHCR at 2-153. The specific claim at issue here, IATC for failure to investigate Braziel's family and social history, was not included in the application.

13. The Texas Court of Criminal Appeals denied Braziel's state habeas application on August 19, 2009, based upon the findings and conclusions of the trial court as well as their own review of the record. SHCR at cover; *Per Curiam* Order dated August 19, 2009.

14. Braziel filed the current federal habeas petition on August 17, 2010. DE 16.

15. This Court held an evidentiary hearing on July 31, 2014, to determine whether the procedural default of Braziel's IATC claim should be excused pursuant to *Martinez* and *Trevino*. DE 36, 64.

## II. The underlying IATC claim

16. In his federal habeas petition, Braziel argued that trial counsel failed to properly investigate and uncover evidence that could have been presented at the punishment phase of trial. DE 16 at 19-22. Braziel contends that "significant" mitigating evidence was available to counsel that they failed to discover, including evidence that he suffered a head injury as a child, that he had a poor work and educational history, that he was allegedly abused by his step-father, and that some of his family members have a history of mental problems. *Id.*

17. Medical history, educational history, evidence of abuse, evidence of childhood poverty and neglect, and evidence of mental illness are all things that Mr. Franklin and Mr. Harrison look for in preparing a mitigation case, and have presented such evidence in other cases when available. Transcript at 42-44, 59, 61, 83, 87-89.

18. In his petition, Braziel also faults counsel for not hiring a psychologist or a "mitigation specialist" to help develop a comprehensive life history

5

        to present to the jury, and for not hiring a neuro-psychologist to determine whether he suffered from organic brain damage. DE 16 at 19-22.

19.    Counsel have employed psychologists and neuro-psychologists to aid in their investigations in the past, and have always hired an investigator when working on death-penalty cases. Transcript at 42-44, 59, 88.

20.    At the time of Braziel's trial in 2001, "mitigation specialists" did not yet exist as the Supreme Court's decision in *Wiggins v. Smith*[4] had yet to be decided. Transcript at 47-48, 60.

21.    To aid in their investigation, counsel did hire a private investigator who was qualified to do a social and psychological history investigation. *Id.* at 34, 48, 71, 89.

22.    With the aid of their investigator, counsel obtained Braziel's school records and attempted to speak with some of his teachers. *Id.* at 50, 64-65, 69-70. The records did not contain any evidence of abuse, injury, neglect, or mental illness, and counsel determined that the records alone were not helpful. *Id.* at 50, 64-65, 68.

23.    Counsel also obtained Braziel's incarceration records from the Texas Department of Criminal Justice (TDCJ), which include a statement by Braziel that he had been hit on the head as a child. *Id.* at 13, 16, 51; PX 3, 5, 13.

24.    When asked about this alleged incident, Braziel repeatedly told counsel "that's just BS" and refused to talk about any injuries or abuse he may have sustained as a child. Transcript at 16-20, 52, 67, 72, 144-45.

25.    In fact, Braziel was completely uncooperative as to anything that may have helped at the punishment phase, and instead wanted to focus solely on his guilt/innocence defense that "he didn't do it." *Id.* at 51-52, 81, 95, 98-99.

---

[4]    539 U.S. 510 (2003).

26. In a pretrial omnibus motion, counsel requested funding to have Braziel examined by a psychologist. CR at 16. However, Braziel refused to be examined, and stated that he would not agree to be examined by a doctor of any sort. *Id.* at 21, 30, 57-58.

27. Based on their interactions with Braziel, both counsel believe that he was the most uncooperative defendant they have ever represented during their numerous years of practice. *Id.* at 52, 82, 98.

28. Braziel also did not want counsel to speak with any of his family members. *Id.* at 56, 66. However, with the help of their investigator, counsel tracked down Braziel's mother and sister and spoke with them on several occasions. *Id.* at 17, 25, 49, 53, 66, 73-74, 78-79, 90-91. The investigator attempted to track down other family members, but was unsuccessful. *Id.* at 49, 53, 91.

29. Braziel's family proved to be just as uncooperative as he was, and would not give any information to counsel that may have been useful at punishment. *Id.* at 19, 22, 25, 29-30, 35, 53-55, 65, 81-82, 95. Both seemed angry, hostile, and possibly on drugs, and they were only interested in griping about "the system." *Id.* at 35, 54, 82, 91.

30. As a result of this hostility, counsel made the strategic decision not to call them at the punishment phase, as they would not have made good witnesses in front of a jury. *Id.* at 91.

31. Braziel has provided no admissible evidence establishing that he suffers from organic brain damage or any mental illness, much less that counsel should have been aware of such issues prior to his July 2001 trial.

32. The only admissible evidence of abuse presented by Braziel comes in the form of a hearsay declaration from his mother, Glenda Turner, dated nine years after his trial. PX 12; Transcript at 141. Turner did not witness any of the alleged abuse herself, and did not provide this information to trial counsel prior to trial. PX 12, 13 at 21; Transcript at 19, 22, 25, 29-30, 35, 53-55, 65, 81-82, 95.

33. Given the lack of cooperation from both Braziel and his family, trial counsel had no reason to suspect that Braziel was the victim of an

7

abusive childhood or suffered from any mental illness. Transcript at 57, 72. And given that Braziel denied receiving the head injury mentioned in the TDCJ intake forms, there was no reason for them to look into it further. *Id.* at 72.

34. At the guilt/innocence phase of trial, the State presented the facts of Doug White's murder: ten days after their honeymoon, Braziel confronted Doug and Lora White as they were out for an evening walk, and demanded money. 30 RR 31-79. Braziel ordered the couple to the ground, and then shot Doug in the head as he and Lora prayed out loud. *Id.* Braziel callously asked "Where is your God at now?" then shot Doug again in the chest. *Id.* He then forced Lora into some bushes where he raped her at gunpoint as she continued to pray out loud. *Id.* Braziel told her that he shot Doug because "he deserved it" but that she "did real good" so he would let her live. *Id.*

35. At the punishment phase, the State presented evidence of Braziel's escalating pattern of disrespect for the law and propensity for violence at the punishment phase. The jury heard that Braziel had been placed on probation for the sexual assault of a fifteen-year-old schoolgirl but was sentenced to five years after he failed to abide by the terms of his probation. Braziel's probation officer, Courtney Pearce, testified that Braziel told her that the victim "deserved" what he did to her, which is exactly what he told Lora White after killing her husband. 30 RR 58; 33 RR 53. Pearce also testified that Braziel failed to abide by the terms of his probation, was a high risk to re-offend, and was "extremely angry" most of the time. 33 RR 52-54.

36. The State also presented evidence concerning Braziel's July 1995 aggravated assault and robbery where he shot a man in his driveway while he was getting ready to go to work one morning. 33 RR 35-49. In addition, the jury heard evidence that Braziel successfully avoided apprehension on the above offense for approximately five years and the instant offense for approximately seven years, and had previously been convicted of evading arrest in 1994. 33 RR 23; SX 116.

37. Given that they received no cooperation from either Braziel or his family in providing mitigating evidence, trial counsel chose a strategy to portray Braziel as a good, hard-working kid whom people should not

fear. Transcript at 29, 37. Counsel believed this to be the best strategy under the circumstances, and that it made a compelling case for a life sentence. *Id.* at 62, 66-67, 97. This strategy was also consistent with Braziel's defense at the guilt/innocence phase that he did not commit this crime. *Id.* at 62.

38. As mitigating evidence, counsel presented the testimony of both Chris and Sandra Freyer whose son, Kenny, was good friends with Braziel while they were in high school. 34 RR 5-21, 25-37. The Freyers testified that Braziel was a smart and pleasant young man who always had at least two jobs. *Id.* at 8-10, 27-29. Both explained that Braziel spent the night with them often and they considered him family, and that they had no fear whatsoever of letting him into their home. *Id.* at 8, 27-29. They never saw Braziel exhibit any sort of hostility or anger, and believed that he was a good influence on their son and kept him out of trouble. *Id.* at 13.

39. Although a witness for the State, counsel also bolstered their mitigation strategy on their cross-examination of Danshatta Wilkerson, who has a son with Braziel. 33 RR 25-34. Wilkerson testified that Braziel was a good father who worked hard and provided for them. *Id.*

### III. State habeas counsel's representation

40. Mr. Parks testified that in preparing Braziel's state habeas petition, he reviewed the trial and appellate record, obtained various records (including prison records), spoke with his client and trial counsel, and did some "additional investigations." Transcript at 102, 120, 122-23.

41. The TDCJ records discovered by counsel and submitted by Braziel at the evidentiary hearing indicate that Braziel received a head injury at age three and that he suffers from "heat headaches and throbbing." PX 13.

42. However, the first two pages of that form (which were omitted by Braziel) state that Braziel had "no mental health needs" at the times he was evaluated in 1997 and 1999. RX "A" at 2-3.

9

43. Although he did not recall it, Mr. Parks also obtained funding to hire a clinical psychologist to address mitigation issues and to determine his level of intellectual and adaptive functioning. Transcript at 103; RX "B".

44. As he did prior to trial, Braziel refused to submit to an examination by the psychologist. Transcript at 133; RX "B".

45. The state habeas petition ultimately filed by counsel had ninety pages of extra-record exhibits attached to it, included TDCJ records, police reports, and affidavits. SHCR at 62-153; Transcript at 122-23.

46. In the state habeas petition, Mr. Parks did not raise a claim that trial counsel was ineffective for failing to properly investigate and present mitigating evidence. He did, however, include an allegation that counsel was ineffective for failing to properly investigate and contest the testimony of Courtney Pearce. SHCR at 53-57.

47. Prior to filing the state habeas petition, Mr. Parks had constructed a rough draft that included an allegation similar to the one now presented in his federal habeas petition—that trial counsel was ineffective for failing to properly investigate and present mitigating evidence. Transcript at 107; PX 9.

48. Mr. Parks admitted that such claims are quite common, and could possibly have been included in the draft simply as a template for further development had he received cooperation from the defendant and his family. Transcript at 131.

49. Mr. Parks also testified that he is uncertain as to why he did not ultimately include the missing claim in the final draft. *Id.* at 112. It could either have been a mistake, or it could have been a deliberate decision not to include the claim. *Id.* at 112, 114.

50. The missing claim in the draft petition was labeled as "claim 5," but in the final draft filed on behalf of Braziel, claim 5 has been replaced by another allegation, indicating that the missing claim was deleted on purpose. PX 9; SHCR at 53. There are no indications in the final petition that an allegation was accidentally omitted.

51. Although he believes that the missing claim is a "strong" claim on its face, counsel testified that his main concern was with another allegation concerning prosecutorial misconduct. Transcript at 129.

52. Counsel agreed that it is a strategic decision on the part of an appellate attorney to weed out weaker claims in order to bolster the likelihood of relief being granted on a stronger claim. *Id.* at 130-31.

## CONCLUSIONS OF LAW

1. In order to overcome his procedural default, Braziel must establish that his underlying IATC claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). A claim is insubstantial when "it does not have any merit" or is "wholly without factual support." *Id.* at 1319.

2. Braziel must also demonstrate that state habeas counsel's representation was actually ineffective under the familiar *Strickland* standard in order to establish that he is entitled to the equitable benefit of *Martinez*. *Id.* at 1319.

3. For both prongs of the *Martinez* analysis, Braziel must establish that (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687-88, 690. When evaluating counsel's performance, this Court "must be highly deferential" to counsel's conduct, and Braziel must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Id.* at 687-89. And in order to establish that he has sustained prejudice, Braziel "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

4. The Court concludes that Braziel's trial counsel were not ineffective because they conducted an adequate and thorough mitigation investigation. Counsel hired a qualified investigator, and with the help of the investigator they obtained Braziel's school and incarceration records and spoke with Braziel's mother and sister. Counsel also was granted funding to have Braziel examined by a psychologist.

5. The Court concludes that trial counsel was not deficient for not hiring a "mitigation specialist," as such a thing did not exist at the time of Braziel's 2001 trial and was not required by the applicable ABA Guidelines. Further, the Supreme Court has soundly rejected the notion that the ABA's guidelines are an "inexorable command with which all capital defense counsel must fully comply" to be constitutionally effective. *Bobby v. Van Hook*, 130 S. Ct. 13, 17 (2009).

6. The Court concludes that both Braziel and his family were completely uncooperative in counsel's attempts to uncover mitigating evidence. Braziel completely refused to speak about his family and upbringing, and wanted instead to focus solely on his guilt/innocence defense that "he didn't do it." Braziel also refused to be examined by any sort of doctor, including the psychologist. Braziel's mother and sister were similarly uncooperative, and refused to give any information that may have been useful at the punishment phase. Instead, they were angry and hostile, and wanted only a chance to gripe about "the system."

7. The Court concludes that trial counsel was not deficient for failing to uncover evidence that was not uncovered due to the total lack of cooperation from the defendant and his family, including evidence of alleged abuse or mental illness in the family. The Supreme Court has noted that trial counsel's actions are substantially influenced by information *supplied* by the defendant, and the reasonableness of investigative decisions depends on this information. *Schriro v. Landrigan*, 550 U.S 465, 476-77 (2007)(finding that where the defendant interferes with counsel's attempts to present a case in mitigation, he cannot later claim ineffective assistance); *Strickland,* 466 U.S. at 691; *Sonnier v. Quarterman*, 476 F.3d 349, 362 (5th Cir. 2007)(holding that a criminal defendant cannot block his attorney's efforts and later claim that the resulting performance was constitutionally deficient).

8. The Court concludes that trial counsel were not deficient in failing to further investigate whether Braziel had been hit on the head as a child. Although counsel was aware of the TDCJ forms where Braziel had stated that such an injury occurred, Braziel curtly dismissed the statement as "BS" and refused to talk about any alleged abuse he may have suffered as a child. Given the lack of cooperation from both Braziel and his family, there was no reason for counsel to believe that such an

     injury existed back in 2001. "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Wiggins*, 539 U.S. at 533.

9.   The Court concludes that trial counsel were not deficient in failing to discover and present evidence that Braziel may have suffered from organic brain damage and/or any mental illness. Braziel has provided no evidence to establish either of these assertions, much less that trial counsel should have been aware of such maladies prior to his 2001 trial. As such his assertions are conclusory and should be dismissed. *Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir. 1990) ("Mere conclusory statements do not raise a constitutional issue in a habeas case").

10.   The Court concludes that trial counsel made a reasonable strategic decision not to present evidence that Braziel did not do well in school without the benefit of having him examined by an expert, as such evidence could prove more harmful than helpful.

11.   The Court concludes that trial counsel made a reasonable strategic decision not to present evidence that Braziel had no known criminal history prior to committing the instant offense at age 18, as the State had just established that Braziel was both a convicted rapist and a murderer. Transcript at 92-94.

12.   Given the total lack of cooperation from Braziel and his family concerning any potential mitigating evidence, the Court concludes that trial counsel made a reasonable strategic decision to present the testimony of the Freyers at punishment in an attempt to demonstrate that Braziel was a good, hard-working person who would not constitute a future danger.

13.   Even assuming that trial counsel was somehow deficient for failing to further investigate Braziel's alleged head injury, abuse, and mental illness, the Court concludes that Braziel fails to demonstrate prejudice due to the minimal mitigating value of the evidence and its potential double-edged nature. *See Miniel v. Cockrell*, 339 F.3d 331, 346-48 (5th Cir. 2003)(finding that the petitioner was not prejudiced by counsel's failure to investigate and present evidence of abuse and neglect during

his childhood); *Ladd v. Cockrell*, 311 F.3d 349 (5th Cir. 2002) (failure to present evidence of troubled childhood, mental retardation diagnosis as a child, low IQ test score, being put on a psychomotor inhibitor, and good behavior in institutional settings not prejudicial because some of the evidence was double edged, and the rest had only "minimal[]" mitigating value; also, evidence of petitioner's future dangerousness was overwhelming); *Johnson v. Cockrell*, 306 F.3d 249, 253 (5th Cir. 2002) (counsel not ineffective for failing to present evidence of alleged brain injury, abusive childhood, and drug and alcohol problems because evidence is "double-edged"); *Kitchens v. Johnson*, 190 F.3d at 702-03 (finding counsel's decision not to investigate mitigating evidence of child abuse, alcoholism, and mental illness was sound strategy where evidence was "double-edged" in nature); *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997) (evidence of a defendant's abuse-filled, violent upbringing and drug/alcohol abuse frequently can be "double-edged").

14. Regardless, the Court concludes that Braziel was not prejudiced from any alleged deficiencies in counsels' performance because there is no reasonable probability that the alleged errors would have affected the outcome of Braziel's punishment phase. *See Strickland*, 466 U.S. at 694. Due to the overwhelming evidence presented by the State at both the guilt/innocence and punishment phase, it is clear that Braziel was not prejudiced from any alleged deficiencies in counsels' failure to present the evidence now at issue. *Id.* at 698 (finding no prejudice due to State's overwhelming evidence on aggravating factors supporting the death penalty); *Jones v. Johnson*, 171 F.3d 270, 277 (5th Cir. 1999) (finding no prejudice due to brutal facts of murder); *Sharp v. Johnson*, 107 F.3d 282, 287 (5th Cir. 1997) (same); *Russell v. Lynaugh*, 892 F.2d 1205, 1213 (5th Cir. 1989) (finding no ineffective assistance "[g]iven the weakness of such testimony when juxtaposed with the overwhelming evidence of guilt, the horrifying nature of the crime, and the abundant impeachment material available to the State").

15. In summary, the Court concludes that Braziel's trial counsel were not deficient for failing to investigate and present mitigating evidence. Nor was Braziel prejudiced by the alleged failure of trial counsel to investigate and present this evidence. Therefore, Braziel has failed to establish that his IATC claim is substantial as required under the *Martinez* analysis.

14

16.  The Court also concludes that Braziel's state habeas counsel, Doug Parks, was not ineffective in his investigation, as counsel conducted an adequate and thorough investigation on Braziel's behalf. Among other things, counsel obtained Braziel's trial and appellate records, his school and incarceration records, and spoke with his client and trial counsel.

17.  Counsel also discovered Braziel's TDCJ records where it stated that he was hit on the head as a child. The same records also indicate that Braziel had "no mental health needs" at the time he was examined. Counsel obtained funding to hire a clinical psychologist to examine Braziel, but he again refused to cooperate. As such, the Court concludes that counsel was not deficient for failing to raise an allegation based on the head injury.

18.  The Court concludes that the record is unclear as to the reasons why state habeas counsel did not include the instant IATC claim in the final petition filed with the state court. However, counsel prepared a well-researched and briefed petition that included six allegations for relief, including a separate IATC claim.

19.  The Court concludes that counsel believed that there were stronger claims in the petition than the instant IATC claim. And it is a strategic decision as an appellate attorney to weed out weaker claims. *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983) (holding appellate counsel is only constitutionally obligated to raise and brief those issues that are believed to have the best chance of success).

20.  The Court concludes that counsel's failure to raise the specific IATC allegations that Braziel, in hindsight, now contends he should have raised does not render counsel's assistance ineffective under *Strickland*. 466 U.S. at 689 ("Even the best criminal defense attorneys would not defend a particular client in the same way."); *cf. Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding appellate counsel is not ineffective merely because he fails to raise issues that his client requests him to raise); *Engle v. Isaac*, 456 U.S. 107, 134 (1982) ("[T]he constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.").

21. As a result, the Court concludes that the exception to procedural default created by the Supreme Court in *Martinez* does not apply to Braziel because he has failed to show that his state habeas counsel, Mr. Parks, was ineffective or that his IATC claim is substantial.

22. Thus, the Court concludes that Braziel is not entitled to the relief he requests.

        Respectfully submitted,

        GREG ABBOTT
        Attorney General of Texas

        DANIEL T. HODGE
        First Assistant Attorney General

        DON CLEMMER
        Deputy Attorney General
        for Criminal Justice

        EDWARD L. MARSHALL
        Chief, Criminal Appeals Division

          s/ Jeremy Greenwell
        JEREMY C. GREENWELL*
        Assistant Attorney General
        State Bar No. 24038926

        P.O. Box 12548, Capitol Station
        Austin, Texas  78711-2548
        (512) 936-1600
        (512) 320-8132 (Fax)
        E-mail:
        jeremy.greenwell@texasattorneygeneral.gov

*Lead Counsel        ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I certify that on the 5th day of September, 2014, a copy of the above pleading was electronically served to the following counsel for Braziel by filing the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court:

DON VERNAY
Attorney at Law
1604 Golf Course Road SE
Rio Rancho, NM 87124
minimal243@yahoo.com

                                                 s/ Jeremy Greenwell
                                                 JEREMY C. GREENWELL
                                                 Assistant Attorney General